UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| S.A.S. JEAN CASSEGRAIN and LONGCHAMP USA, INC., | )<br>)<br>) |
|  | ) |
| PLAINTIFFS, | )<br>) |
|  | ) |
| v. | )<br>) |
| LAILA ROWE, INC.; GMA ACCESSORIES, INC., d/b/a CAPELLI NEW YORK; and BED BATH & BEYOND, INC. | )<br>)<br>)<br>) |
|  | ) |
| DEFENDANTS. | )<br>) |

JUDGE NATHAN

ECF Case
Civil Action No.

COMPLAINT

Jury Trial Demanded

Plaintiffs S.A.S. JEAN CASSEGRAIN and LONGCHAMP USA, INC., by and

through their attorneys, and as for their Complaint against LAILA ROWE, INC.; GMA

ACCESSORIES, INC., doing business as CAPELLI NEW YORK; and BED BATH &

BEYOND, INC., allege as follows:

**NATURE OF THE ACTION**

1.      Plaintiffs seek injunctive and monetary relief for acts of trademark, design

patent, and trade dress infringement, as well as for false designation of origin and unfair

competition by Defendants.  This action arises under Sections 32 and 43(a) of the

Lanham Act, 15 U.S.C. § 1051 et seq., and Section 281 of the U.S. Patent Act, 35

U.S.C. § 251 et seq.

**PARTIES**

2.      Plaintiff S.A.S. Jean Cassegrain is a company existing under the laws of

France, having a place of business at 12, Rue Saint-Florentin, 75001 Paris, France.

S.A.S. Jean Cassegrain, a French holding company, is part of a French group of companies that are well known for the manufacture, promotion and sale of handbags and accessory products which are sold under the LONGCHAMP trademark.  S.A.S. Jean Cassegrain is the owner of the trademark and trade dress rights in the Style 1623 handbag and related bags ("Plaintiffs' 1623 Handbags") and of the design patent rights in the Style 1623 coin purses ("Plaintiffs' 1623 Coin Purses") asserted herein (collectively, "Style 1623 Products").

3.      Plaintiff Longchamp USA, Inc. ("Longchamp USA") is a corporation existing under the laws of the state of Delaware, having an office and place of business at 4 Applegate Drive, Suite B, Robbinsville, New Jersey 08691.  Longchamp USA is the exclusive distributor in the United States of the Style 1623 Products, as set forth hereinafter.

4.      On information and belief, Defendant Laila Rowe, Inc. ("Laila Rowe") is a corporation existing under the laws of the state of New York, with a principal place of business located at 3 Empire Boulevard, South Hackensack, New Jersey 07606.

5.      On information and belief, Laila Rowe is in the business of retail sales of fashion products and accessories, including handbags and coin purses.

6.      On information and belief, Laila Rowe operates approximately nineteen retail stores throughout the United States, including six within the state of New York and five within this district, and also sells its products online at the website www.eretailmall.com.

7.      On information and belief, Laila Rowe regularly sells merchandise to customers in New York and in this district, including items alleged to infringe Plaintiffs' rights as alleged hereinafter.

8.      On information and belief, Defendant GMA Accessories, Inc., doing business as Capelli New York ("Capelli"), is a corporation existing under the laws of the State of New York, with a principal place of business located at 3 Empire Boulevard, South Hackensack, New Jersey 07606.

9.      On information and belief, Capelli is in the business of designing, manufacturing, marketing, and selling fashion products and accessories, including handbags and coin purses.

10.     On information and belief, Capelli operates sales offices, show rooms, buying offices, factories, warehouses, and distribution space in multiple countries across the world, and sells its products online at the website www.eretailmall.com.

11.     On information and belief, Capelli's marketing and sales operations include the wholesale and retail markets.

12.     On information and belief, Capelli operates its headquarters, as well as sales offices, show rooms, and retail stores, in New York and within this district, and it regularly sells merchandise to customers in New York and in this district, including items alleged to infringe Plaintiffs' rights as alleged hereinafter.

13.     On information and belief, Defendant Bed Bath & Beyond, Inc. ("BBB") is a corporation existing under the laws of the state of New York, with a principal place of business located at 650 Liberty Avenue, Union, New Jersey 07083.

14.     On information and belief, BBB is in the business of retail sales of home goods, home décor, consumer products, and accessories, including handbags, coin purses, and related goods.

15.     On information and belief, BBB operates over 1,400 retail stores throughout North America, including four within this district, and also sells its products online at the website www.bedbathandbeyond.com.

16.     On information and belief, BBB regularly sells merchandise to customers in New York and in this district, including items alleged to infringe Plaintiffs' rights as alleged hereinafter.

**JURISDICTION AND VENUE**

17.     This action arises under the Lanham Act, 15 U.S.C. § 1501 et seq., including §§ 1114 and 1125; the Patent Act, 35 U.S.C. § 251 et seq.; and under the laws of the State of New York.

18.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1338(a) and (b). This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

19.     This Court has personal jurisdiction over the Defendants because all Defendants transact business within this State and judicial district, regularly do or solicit business within this State and judicial district, derive substantial revenue from intra-state and inter-state commerce, have committed tortious acts having injurious consequences within this State and judicial district, and because Defendants expected or should have

reasonably expected their tortious acts to have injurious consequences within this State and judicial district.

20.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c).


## FACTS COMMON TO ALL COUNTS

21.     For twenty years, Plaintiffs and their affiliated companies have manufactured, sold and offered for sale a distinctive and unique handbag identified as Style 1623.  First created in the LE PLIAGE version, Style 1623 is now available in several versions and sizes, including a coin purse version.  The Style 1623 Products are sold in high-quality retail stores throughout the world, including in the United States, as well as in Longchamp boutiques in the United States.  LONGCHAMP products are also available over the Internet.  Further information regarding the Style 1623 Products, as well as other bags offered under the LONGCHAMP brand, is available at www.longchamp.com.

22.     As a result of widespread sales and of advertising and promotion, the look of the Style 1623 Products has become distinctive and has acquired secondary meaning, indicating to the trade and the purchasing public a single source of the aforesaid bags, thereby serving to distinguish said items from handbags and coin purses of competitors.  The Style 1623 Products have, in fact, become an important signature symbol and asset of Plaintiffs whereby the trade and purchasing public can identify the Style 1623 Products as originating from Plaintiffs by their look alone.  A

photoprint showing a Style 1623 handbag ("Plaintiffs' 1623 Handbag") and coin purse ("Plaintiffs' 1623 Coin Purse") is annexed hereto as Exhibit A.

23.     Plaintiffs' distinctive, original and arbitrary trade dress, which identifies Plaintiffs as the source of Plaintiffs' 1623 Handbag, encompasses a combination of certain non-functional elements, including the following:

- Distinctive trapezoidal shape/silhouette;

- Leather trim with distinctive stitching around the edges;

- Distinctive shape and positioning of front leather flap;

- Positioning of snap on the front leather flap;

- Distinctive leather tabs at each end of the zipper; and

- Distinctive tubular handles affixed to the handbag by classic shield-shaped fasteners.

24.     As a result of the foregoing, Plaintiffs' 1623 Handbags have acquired a distinctive, non-functional and protectable trade dress.

25.     On or about March 15, 2005, the United States Patent and Trademark Office issued to S.A.S. Jean Cassegrain U.S. Design Patent No. D502,804, directed to the overall design of Plaintiffs' 1623 Coin Purse.  The '804 design patent remains in full force and effect.  A copy of this design patent is annexed hereto as Exhibit B.

26.     On or about March 7, 2006, the United States Patent and Trademark Office issued to S.A.S. Jean Cassegrain U.S. Trademark Reg. No. 3,064,959, directed to the distinctive "look" of Plaintiffs' 1623 Handbag.  The '959 registration remains in full force and effect, and is incontestable.  A copy of this registration is annexed hereto as Exhibit C.

27.    On or about May 22, 2007, the United States Patent and Trademark Office issued to S.A.S. Jean Cassegrain U.S. Trademark Reg. No. 3,244,595, directed to the distinctive flap and handle "look" of Plaintiffs' 1623 Handbag.  The '595 registration remains in full force and effect.  A copy of this registration is annexed hereto as Exhibit D.

28.    Defendants, upon information and belief, knowing of the valuable goodwill and extensive recognition that Plaintiffs had already established in the marketplace for the Style 1623 Products, and intending to trade upon that goodwill and recognition, are deliberately manufacturing, marketing, and selling handbags and coin purses which are confusingly similar to Plaintiffs' Style 1623 Products.

29.    Defendants' handbags contain virtually all of the distinctive features found in Plaintiffs' trade dress set forth in Paragraph 23 hereof including, but not limited to, the same overall trapezoidal shape, the same shape and positioning of a faux-flap, the same positioning of a snap on the faux-flap, the same tabs at each end of the zipper, and the same tubular handles attached by shield-shaped fasteners.

30.    Defendants' coin purses are identical in appearance to Plaintiffs' 1623 Coin Purses as illustrated in Plaintiffs' design patent registration.

## FACTS SPECIFIC TO DEFENDANT LAILA ROWE

31.    After learning that Defendant Laila Rowe was selling a handbag and two coin purses which Plaintiffs asserted were infringing upon the Style 1623 Products, Plaintiffs' counsel wrote to Laila Rowe on September 27, 2012.

32.     Plaintiffs' letter notified Laila Rowe of their rights in the Style 1623 Products and demanded that Laila Rowe (a) cease and desist from continuing to sell the infringing products, (b) provide its sales information concerning the infringing products, and (c) identify its supplier of the infringing products. Images of the infringing products are provided at Exhibit E.

33.     Counsel for Laila Rowe responded to Plaintiffs' letter, stating, among other things, that all infringing products had been removed from Laila Rowe stores as of October 12, 2012, and that all sales thereof had ceased.

34.     Subsequently, Plaintiffs became aware that a third party retail store, Destination A, was selling the identical infringing bags, complete with Laila Rowe hangtags.

35.     Plaintiffs thereafter sent a new letter to Laila Rowe on January 3, 2013, concerning its supply of infringing products to third party stores, and demanding that Laila Rowe recall infringing items from its retail customers, provide manufacture and supply information, and provide sales information, along with an accounting of all profits made at the wholesale and retail levels.

36.     In its response, dated January 18, 2013, Laila Rowe stated that it had previously recalled all infringing products from its customer stores at the same time that it removed all infringing products from its own stores.  Laila Rowe stated that the Destination A store apparently did not remove all infringing items at the time Laila Rowe's recall was issued, but that the store presently had removed all remaining infringing items.  Laila Rowe's letter stated that the infringing products were no longer offered at any retail store, but did not provide manufacture or supply information for the

infringing products, nor did it provide sales information or an accounting, as requested by Plaintiffs.  A copy of this communication is attached hereto as Exhibit F.

37.     Plaintiffs subsequently wrote to Laila Rowe once more requesting invoices and purchase orders from suppliers and to customers with respect to the infringing handbags and coin purses.  Plaintiffs also provided a draft settlement proposal in an effort to resolve the dispute amicably.

38.     On or about March 8, 2013, Laila Rowe, by its counsel, stated that it would provide the requested invoices and purchase orders by the end of that month.  On or about April 8, 2013, Laila Rowe indicated that it was still attempting to gather the requested information and would provide it by April 16, 2013.

39.     On or about April 17, 2013, Laila Rowe provided information showing its total sales figures for the two sizes of infringing coin purses from August through October 2012.

40.     Plaintiffs subsequently responded to Laila Rowe, stating that the sales figures provided did not account for the third product, the infringing handbag, and that furthermore, the sales figures did not account for sales made prior to August 2012, when in fact, Plaintiffs knew that the infringing products were being sold at least as early as July 2012.  In an effort to resolve the matter, Plaintiffs again provided a written settlement proposal.

41.     On or about June 18, 2013, Laila Rowe informed Plaintiffs that it refused to sign the settlement agreement or pay the settlement figure Plaintiffs requested.  Laila Rowe did not provide any counter-offer or suggest any revisions to the settlement proposal.  Rather, Laila Rowe stated that, in its view, having removed the infringing

items from its stores and having provided sales information to Plaintiffs was sufficient to resolve the dispute.

42.     Soon thereafter, Plaintiffs became aware that Laila Rowe was selling a new version of handbags and coin purses which resembled the first infringing bags shown in Exhibit E.  Images of the newly designed handbags and coin purses are shown in Exhibit G.

43.     Plaintiffs informed Laila Rowe that it considered Laila Rowe's actions in selling these new items to be disingenuous and made in bad faith.  In light thereof, Plaintiffs reiterated their demand that Laila Rowe sign their settlement proposal and make a payment accounting for damages.  In a further effort to resolve the dispute, Plaintiffs offered to reduce their settlement demand.

44.     Laila Rowe did not respond to this communication, despite several reminders by Plaintiffs by email and by telephone in November 2013, December 2013, January 2014, February 2014, March 2014, and May 2014.

45.     On or about June 4, 2014, counsel for the parties held a telephone discussion in which Plaintiffs reiterated their settlement demands.

46.     Despite continued reminders through June 2014 and July 2014, Laila Rowe did not provide any of the requested information or make any further response. Consequently, no settlement agreement has been reached between Plaintiffs and Laila Rowe.

## FACTS SPECIFIC TO DEFENDANTS BBB AND CAPELLI

47.     Plaintiffs have a history with infringements by Defendant BBB. Specifically, in 2005, Plaintiffs became aware that BBB was selling handbags which Plaintiffs asserted were infringing upon Plaintiffs' Handbags.  Plaintiffs ultimately resolved their dispute with BBB.

48.     As a result of their prior dealings, BBB was aware of and on notice of Plaintiffs' rights asserted in Plaintiffs' 1623 Handbags.

49.     On or about December 12, 2012, Plaintiffs became aware that BBB was selling coin purses which infringed upon Plaintiffs' 1623 Coin Purse, as depicted in the image annexed at Exhibit H.

50.     Upon information and belief, based upon the label provided on the hangtag affixed to the infringing coin purses, they were supplied to BBB by Defendant Capelli.

51.     Plaintiffs' counsel wrote to BBB and to Capelli to notify them of Plaintiffs' rights in Plaintiffs' 1623 Coin Purse, and to demand that BBB and Capelli (a) cease and desist from continuing to sell the infringing products, (b) provide its sales information concerning the infringing products, and (c) identify its supplier of the infringing products.

52.     In January 2013, counsel purporting to represent both BBB and Capelli responded to Plaintiffs' letter, stating, among other things, that BBB and Capelli had both ceased selling the infringing products. A dialogue between counsel began, with the goal of reaching a resolution to the infringement dispute.  However, BBB and Capelli's counsel, for prolonged periods of time, would not respond to communications from Plaintiffs' counsel.

53.     Consequently, despite Plaintiffs' repeated overtures and efforts to reach a reasonable and amicable settlement with Defendants BBB and Capelli, no settlement has been reached to date.

## FACTS COMMON TO ALL DEFENDANTS

54.     Upon information and belief, Defendants Laila Rowe and Capelli maintain corporate offices located at the same address.

55.     Upon information and belief, Defendants Laila Rowe and Capelli are related entities.  As such, each had knowledge of the activities of the other at all relevant times.

56.     Upon information and belief, due to the identical nature of the infringing products sold by each Defendant, these infringing products were all manufactured by the same entity.

57.     Upon information and belief, due to information provided on its website, Defendant Capelli maintains its own manufacturing facilities in China.

58.     Upon information and belief, Defendant Capelli is responsible for manufacturing the infringing products sold by all three Defendants, as shown in Exhibits E and H.

## COUNT I
### [INFRINGEMENT OF REGISTERED TRADEMARKS]
### [Defendant Laila Rowe]

59.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 58 as if fully set forth herein.

60.     Defendant Laila Rowe, in manufacturing, causing to be manufactured, importing, supplying, selling, and/or offering for sale products constituting handbags which copy the design of Plaintiffs' 1623 Handbags, is likely to cause confusion, mistake, or deception in commerce among members of the purchasing public.

61.     Laila Rowe's improper sale of products in the form of handbags, which are the subject of Plaintiffs' federal trademark registrations, violates Section 32 of the Lanham Act, 15 U.S.C. § 1114, and constitutes trademark infringement.

62.     Laila Rowe's failure to effectuate a recall on all of the stores to which it supplied infringing products, its redesign of new products still resembling the original infringing products, and its failure to timely respond to and cooperate with Plaintiffs' requests demonstrate Laila Rowe's willful infringement of Plaintiffs' trademark rights.

63.     By reason of the acts of Laila Rowe as alleged herein, Plaintiffs have, and will, suffer irreparable damage to their reputation and a loss of sales and profits which Plaintiffs would have made but for said acts of Laila Rowe.

64.     Laila Rowe has been unjustly enriched by its sale of infringing handbags, and Plaintiffs are entitled to an accounting of Laila Rowe's profits therefrom.

65.     Laila Rowe's foregoing activities have damaged Plaintiffs in an amount as yet unknown, but the damage to Plaintiffs and the reputation of Plaintiffs' 1623 Handbags, if continued, is believed to be in excess of $100,000.

**COUNT II
[INFRINGEMENT OF TRADE DRESS]
[Defendant Laila Rowe]**

66.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 65 as if fully set forth herein.

13

67.     Defendant Laila Rowe, in manufacturing, causing to be manufactured, importing, supplying, selling, and/or offering for sale products constituting handbags which copy the design of Plaintiffs' 1623 Handbags, have infringed and are infringing upon Plaintiffs' non-functional trade dress enumerated in paragraph 23 herein.

68.     Plaintiffs' trade dress is non-functional because the distinctive features claimed do not serve any utilitarian purpose.  A handbag would function just as well in the absence of any of these particular features.  Indeed, Plaintiffs, as well as dozens of Plaintiffs' competitors, manufacture and sell several other styles of handbags which do not resemble or include elements of the trade dress claimed in Plaintiffs' 1623 Handbags.

69.     Laila Rowe's sales of handbags which are substantially similar copies of Plaintiffs' 1623 Handbags are likely to cause confusion, mistake, or deception in commerce among members of the purchasing public with respect to Plaintiffs' 1623 Handbags.

70.     By reason of the acts of Laila Rowe as alleged herein, Plaintiffs have, and will, suffer irreparable damage to their reputation and a loss of sales and profits which Plaintiffs would have made but for said acts of Laila Rowe.

71.     Laila Rowe has been unjustly enriched by its sale of infringing handbags and coin purses, and Plaintiffs are entitled to an accounting of its profits therefrom.

72.     Laila Rowe's foregoing activities have damaged Plaintiffs in an amount as yet unknown, but the damage to Plaintiffs and to the reputation of Plaintiffs' 1623 Handbags, if continued, is believed to be in excess of $100,000.

14

## COUNT III
## [INFRINGEMENT OF DESIGN PATENT]
## [All Defendants]

73.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 72 as if fully set forth herein.

74.     The Defendants, in manufacturing, causing to be manufactured, importing, supplying, selling, and/or offering for sale products constituting coin purses, have infringed upon the patented design of Plaintiffs' 1623 Coin Purse pursuant to 35 U.S.C. §§ 271(a) and (b), in that the Defendants' coin purses are substantially the same as Plaintiffs' patented products, and are likely to cause deception and confusion among the purchasing public by virtue of this resemblance.

75.     By reason of the acts of Defendants as alleged herein, Plaintiffs have, and will, suffer irreparable damage to their reputation and a loss of sales and profits which Plaintiffs would have made but for said acts of Defendants.

76.     Defendants have been unjustly enriched by its sale of infringing coin purses, and Plaintiffs, in accordance with 35 U.S.C. § 289, are entitled to an accounting of each Defendant's profits therefrom, in an amount no less than $250.

77.     The Defendants' foregoing activities have damaged Plaintiffs in an amount as yet unknown, but the damage to Plaintiffs and to the reputation of Plaintiffs' 1623 Coin Purses, if continued, is believed to be in excess of $1,000,000.

## COUNT IV
## [FALSE DESIGNATION OF ORIGIN]
## [All Defendants]

78.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 77 as if fully set forth herein.

79.     Defendants, in manufacturing, causing to be manufactured, importing, selling, and/or offering for sale handbags and/or coin purses which copy the design of Plaintiffs' Style 1623 Products, are likely to cause confusion, mistake or deception in the trade and with the purchasing public as to the source or origin or sponsorship of said imitative items and/or is likely to cause the trade and/or the purchasing public to incorrectly believe that Defendants' infringing handbags and/or coin purses originate with, are endorsed by, or are otherwise associated with Plaintiffs.

80.     Such confusion likely to be caused by the Defendants includes, but is not limited to, confusion engendered before sale of the items (initial interest confusion) in which purchasers and potential purchasers will be drawn to the items in question because of their knowledge of Plaintiffs' Style 1623 Products, and confusion engendered after the sale of the items in question (e.g., post-sale confusion), in which purchasers and prospective purchasers will see the Defendants' infringing bags being carried and mistakenly believe that these bags are associated with or sponsored by Plaintiffs.

81.     The aforesaid activities of the Defendants in selling the infringing handbags and/or coin purses in commerce constitutes false descriptions, false representations, and false designations of origin or sponsorship, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

82.     By reason of the acts of Defendants as alleged herein, Plaintiffs have, and will, suffer irreparable damage to their reputation and a loss of sales and profits which Plaintiffs would have made but for said acts of Defendants.

83.     Defendants have been unjustly enriched by their sale of infringing handbags and/or coin purses, and Plaintiffs are entitled to an accounting of each Defendant's profits therefrom.

84.     Defendants' foregoing activities have damaged Plaintiffs in an amount as yet unknown, but the damage to Plaintiffs and the reputation of the Style 1623 Products, if continued, is believed to be in excess of $1,000,000.

**COUNT V**
**[COMMON LAW UNFAIR COMPETITION]**
**[All Defendants]**

85.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 84 as if fully set forth herein.

86.     Defendants have engaged in a course of unfair competition by manufacturing, causing to be manufactured, importing, selling, and/or offering for sale infringing imitative handbags and/or coin purses, substantially similar in appearance to that of Plaintiffs, and in misappropriating the unique design and trade dress of Plaintiffs' Style 1623 Products.

87.     Upon information and belief, Defendants' acts alleged herein are specifically oriented predatory business practices made in bad faith, the dominant purpose and effect of which is to pass off and palm off their imitative handbags and/or coin purses as originating with Plaintiffs, and to confuse buyers as to the source or origin of such goods, or to otherwise trade on or misappropriate the goodwill and reputation of Plaintiffs, in violation of the common law of New York.

88.     By reason of the acts of Defendants as alleged herein, Plaintiffs have, and will, suffer irreparable damage to their reputation and a loss of sales and profits which Plaintiffs would have made but for said acts of Defendants.

89.     Defendants have been unjustly enriched by their sale of infringing handbags and/or coin purses, and Plaintiffs are entitled to an accounting of each Defendant's profits therefrom.

90.     Defendants' foregoing activities have damaged Plaintiffs in an amount as yet unknown, but the damage to Plaintiffs and the reputation of Plaintiffs' Style 1623 Products, if continued, is believed to be in excess of $1,000,000.

WHEREFORE, Plaintiffs prays that this Court grant judgment and award relief against each Defendant as follows:

## On Count I

(i)     Find that Defendant Laila Rowe has infringed Plaintiffs' federally registered trademarks;

(ii)    Find that Laila Rowe's acts of infringement have been willful;

(iii)   Permanently enjoin Laila Rowe and its officers, agents, servants, employees, attorneys and those persons, firms, or corporations acting in concert and participation with them from manufacturing, marketing, advertising, promoting, offering for sale, selling, purchasing, distributing, or in any other way becoming involved with items bearing the federally registered trademarks (shown in Exhibits C and D), or trademarks substantially similar thereto;

(iv)    Award damages to Plaintiffs, including damages for injury to Plaintiffs' business reputation and goodwill, and all other damages arising out of Laila Rowe's

acts of unfair competition, in an amount to be determined, but if Laila Rowe's activities are continued without abatement, in an amount of at least $100,000;

(v)     Order an accounting by Laila Rowe to Plaintiffs of any profit gained from the sale of handbags infringing upon Plaintiffs' federally registered trademarks;

(vi)    Award three times the amount of Plaintiffs' damages or Laila Rowe's profits, whichever is greater;

(vii)   Award Plaintiffs' attorney fees and costs;

(viii)  Order destruction of all remaining, unsold products of Laila Rowe bearing the infringing trademarks, as well as of all materials and means of production of such infringing bags; and

(ix)    Award such other and further relief as the Court may deem just and proper.

**On Count II**

(i)     Find that Defendant Laila Rowe has infringed Plaintiffs' trade dress;

(ii)    Find that Laila Rowe's acts of infringement have been willful;

(iii)   Permanently enjoin Laila Rowe and its officers, agents, servants, employees, attorneys and those persons, firms, or corporations acting in concert and participation with them from manufacturing, marketing, advertising, promoting, offering for sale, selling, purchasing, distributing, or in any other way becoming involved with items bearing Plaintiffs' trade dress, described at paragraph 23 hereof and shown in Exhibit A;

(iv)    Award damages to Plaintiffs, including damages for injury to Plaintiffs' business reputation and goodwill, and all other damages arising out of Laila Rowe's

acts of unfair competition, in an amount to be determined, but if Laila Rowe's activities are continued without abatement, in an amount of at least $100,000;

(v)    Order an accounting by Laila Rowe to Plaintiffs of any profit gained from the sale of handbags infringing upon Plaintiffs' trade dress;

(vi)    Award three times the amount of Plaintiffs' damages or Laila Rowe's profits, whichever is greater;

(vii)    Award Plaintiffs' attorney fees and costs;

(viii)    Order destruction of all remaining, unsold products of Laila Rowe bearing Plaintiffs' trade dress, as well as of all materials and means of production of such infringing bags; and

(ix)    Award such other and further relief as the Court may deem just and proper.

**On Count III**

(i)    Find that Defendants, jointly and severally, have infringed Plaintiff's federally registered design patent (shown in Exhibit B);

(ii)    Permanently enjoin the Defendants, jointly and severally, and their officers, agents, servants, employees, attorneys and those persons, firms, or corporations acting in concert and participation with them from manufacturing, marketing, advertising, promoting, offering for sale, selling, purchasing, distributing, or in any other way becoming involved with items bearing Plaintiffs' patented design (shown in Exhibits E, G, and H), or designs substantially similar thereto;

(iii)    Award damages to Plaintiffs, jointly and severally, including damages for injury to Plaintiffs' business reputation and goodwill, and all other damages arising out

of the Defendants' acts of patent infringement, in an amount to be determined, but if Defendants' activities are continued without abatement, in an amount of at least $1,000,000;

(iv)    Order an accounting by the Defendants, jointly and severally, to Plaintiffs of any profit, but not less than $250 per Defendant, gained from the sale of products infringing upon Plaintiffs' design patent;

(v)    Award three times the amount of Plaintiffs' damages or Defendants' joint and several profits, whichever is greater;

(vi)    Order destruction of all remaining unsold infringing products of each Defendant, as well as of all materials and means of production of such infringing products; and

(vii)    Award such other and further relief as the Court may deem just and proper.

**On Counts IV and V**

(i)    Find that Defendants, jointly and severally, have committed acts of unfair competition;

(ii)    Permanently enjoin the Defendants, jointly and severally, and their officers, agents, servants, employees, attorneys and those persons, firms, or corporations acting in concert and participation with them from manufacturing, marketing, advertising, promoting, offering for sale, selling, purchasing, distributing, or in any other way becoming involved with items bearing Plaintiffs' trademarks, patented designs, or trade dress (shown in Exhibits A, B, C, and D), or any other colorable

imitation of Plaintiffs' trademarks, patented designs, or trade dress, including, but not limited to, Defendants' bags (shown in Exhibits E, G and H);

(iii)    Award damages to Plaintiffs, including damages for injury to Plaintiffs' business reputation and goodwill, and all other damages arising out of Defendants' acts of unfair competition, in an amount to be determined, but if Defendants' activities are continued without abatement, in an amount of at least $1,000,000;

(iv)    Order an accounting by the Defendants, jointly and severally, to Plaintiffs of any profit gained from the sale of their goods bearing Plaintiffs' trademarks, patented designs, or trade dress, or any other colorable imitation of Plaintiffs' trade dress;

(v)    Award three times the amount of Plaintiffs' damages or Defendants' joint and several profits, whichever is greater;

(vi)    Order destruction of all remaining, unsold products of each Defendant bearing the infringing trademarks, as well as of all materials and means of production of such infringing bags; and

(vii)    Award such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs demand a jury trial on all issues so triable by a jury.

Respectfully submitted,

GOTTLIEB, RACKMAN & REISMAN, P.C.
Attorneys for Plaintiff
270 Madison Avenue, 8th Floor
New York, NY 10016
(212) 684-3900
ggottlieb@grr.com
mmisthal@grr.com
apeikes@grr.com

By _____
George Gottlieb (GG-5761)
Marc P. Misthal (MM-6636)
Ariel S. Peikes  (AP-9157)

Dated:       February 9, 2015
             New York, NY

# Exhibit A

# 1623 Handbag



# 1623 Coin Purse



# Exhibit B

US00D502804S

## (12) United States Design Patent

**Delafontaine**

(10) Patent No.: **US D502,804 S**

(45) Date of Patent: ∗∗ **Mar. 15, 2005**

(54) **HANDBAG**

(75) Inventor: **Sophie Delafontaine**, Paris (FR)

(73) Assignee: **S.A.S. Jean Cassegrain**, Paris (FR)

(∗∗) Term: **14 Years**

(21) Appl. No.: **29/185,522**

(22) Filed: **Jun. 27, 2003**

(51) **LOC (7) Cl.** .................................................. **03-01**
(52) **U.S. Cl.** ...................................................... **D3/243**
(58) **Field of Search** ......................... D3/232, 233, 241,
D3/243, 245, 246, 244, 234, 238, 301,
303; 150/114, 117, 103, 104, 106, 111,
127, 128, 130, 900; 190/103, 109, 113,
115, 900, 903, 1, 102, 104, 105, 106, 107,
110, 902; 383/6, 31, 37, 38, 40, 66, 78,
98, 2, 4, 30, 120

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 905,034 | A | * | 11/1908 | Weidemann | ................. D3/241 |
| 1,137,047 | A | * | 4/1915 | Bushwick | ................... D3/233 |
| D157,266 | S | * | 2/1950 | Kiernan | ..................... D3/900 |
| D160,147 | S | * | 9/1950 | Chase | ....................... D3/233 |
| D246,939 | S | * | 1/1978 | Casser | ....................... D3/233 |
| D249,593 | S | * | 9/1978 | Glaser | ....................... D3/245 |

D452,073 S  12/2001  Cassegrain

OTHER PUBLICATIONS

Longchamp–Paris, Les Pliages, Spring 2002, Catalogue, Paris, France.

* cited by examiner

*Primary Examiner*—Louis S. Zarfas
*Assistant Examiner*—Monica A Weingart
(74) *Attorney, Agent, or Firm*—Gottlieb, Rackman & Reisman, P.C.

(57) **CLAIM**

The ornamental design for a handbag, as shown and described.

**DESCRIPTION**

FIG. **1** is a bottom plan view of a handbag showing my new design;
FIG. **2** is a front elevation view thereof;
FIG. **3** is a right side elevation view thereof, the left side elevation view being a mirror image thereof;
FIG. **4** is a top plan view thereof; and,
FIG. **5** is a rear elevation view thereof.
The broken line showing of stitching, in FIGS. **1–5** , and a zipper pull, in FIGS. **2–5**, is for illustrative purposes only and forms no part of the claimed design.

**1 Claim, 2 Drawing Sheets**







FIG. 1



FIG. 2



FIG. 3



FIG. 4

FIG. 5



Exhibit C

Int. Cl.: 18

Prior U.S. Cls.: 1, 2, 3, 22 and 41

Reg. No. 3,064,959

## United States Patent and Trademark Office

Registered Mar. 7, 2006

## TRADEMARK
## PRINCIPAL REGISTER



S.A.S. JEAN CASSEGRAIN (FRANCE CORPORA-
 TION)
12, RUE SAINT-FLORENTIN
75001 PARIS, FRANCE

  FOR: HANDBAGS, IN CLASS 18 (U.S. CLS. 1, 2, 3,
22 AND 41).

  FIRST USE 12-12-1993; IN COMMERCE 12-12-1993.

THE MARK CONSISTS OF THE CONFIGURA-
TION OF A HANDBAG.

  SEC. 2(F).

  SER. NO. 76-633,925, FILED 3-22-2005.

JULIE WATSON, EXAMINING ATTORNEY

# Exhibit D

Int. Cl.: 18

Prior U.S. Cls.: 1, 2, 3, 22 and 41

**United States Patent and Trademark Office**

Reg. No. 3,244,595

Registered May 22, 2007

## TRADEMARK
### PRINCIPAL REGISTER



S.A.S. JEAN CASSEGRAIN (FRANCE CORPORA-
TION)
12, RUE SAINT-FLORENTIN
PARIS, FRANCE 75001

FOR: HANDBAGS, IN CLASS 18 (U.S. CLS. 1, 2, 3, 22 AND 41).

FIRST USE 12-12-1993; IN COMMERCE 12-12-1993.

OWNER OF U.S. REG. NO. 3,064,959.

THE MARK CONSISTS OF THE FLAP AND HANDLES OF A HANDBAG. THE FLAP IS GEN-ERALLY RECTANGULAR IN SHAPE, HAS ROUN-DED CORNERS, HAS STITCHING NEAR THE EDGES OF THE FLAP AND HAS A SNAP LOCATED IN THE CENTER LOWER PORTION OF THE FLAP.

THE HANDLES HAVE GENERALLY U-SHAPED CONNECTING PORTIONS WHICH ARE POINTED AT THE END OF THE U, WITH SHIELD-SHAPED STITCHING ALONG THE LOWER PORTION OF THE CONNECTING PORTIONS OF THE HANDLE. THE STITCHING ON THE FLAP AND ON THE HANDLES, AND THE SNAP, ARE CLAIMED AS FEATURES OF THE MARK. A HANDBAG IS SHOWN IN BROKEN-LINE TO INDICATE PLACE-MENT OF THE MARK WITH RESPECT THERETO.

SEC. 2(F).

SER. NO. 78-917,722, FILED 6-27-2006.

DAVID COLLIER, EXAMINING ATTORNEY

Exhibit E





# Exhibit F

LAW OFFICES OF

# FAY KAPLUN & MARCIN, LLP

150 BROADWAY, SUITE 702
NEW YORK, N.Y. 10038
PHONE: (212) 619-6000
FAX: (212) 619-0276 / (212) 208-6819

PHONE: 212-619-6000 EXT. 204
EMAIL: MMARCIN@FKMIPLAW.COM

**VIA ELECTRONIC MAIL**

January 18, 2013

Marc Misthal, Esq.
Gottlieb, Rackman & Reisman, P.C.
270 Madison Avenue
New York, NY 10016

Re:    **Longchamp and Laila Rowe**

Dear Marc:

This is to respond to your letter of January 4, 2013.  As we indicated in our letter of November 14, 2012, our client Laila Rowe, Inc. ("Laila Rowe") removed all of the accused goods from the Laila Rowe retail locations by October 12, 2012.  In addition, Laila Rowe also recalled all the accused products from third parties at the same time.  Contrary to your assertion, Laila Rowe is not a supplier to many third party stores.   It is unfortunate that Destination A did not immediately remove the goods as requested by Laila Rowe, but it is our understanding that Destination A has subsequently removed all the accused products from their retail locations.  Thus, it is our understanding that there are currently no accused products for sale at any retail locations, either Laila Rowe or third parties, where the accused products were supplied by Laila Rowe.  In addition, Laila Rowe has no plans to sell or offer to sell the accused products.

Please feel free to contact me if you have any questions.

Sincerely,

Michael J. Marcin

cc: Laila Rowe

# Exhibit G





Exhibit H

